United States District Court
Southern District of Texas
**ENTERED**
September 26, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | |
|---|---|
| **DAVID EDWARD ELLIS,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| **VS.** § | **CIVIL ACTION NO. 5:21-CV-00025** |
| § | |
| **SCHNEIDER NATIONAL, INC.,** *et al.*, § | |
| § | |
| **Defendants.** § | |

## ORDER

Plaintiff David Edward Ellis ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, filed

this action on March 10, 2021, against his employer, Defendant Schneider National Carriers, Inc.

("Defendant Schneider") and his two (2) supervisors, Jorge Andres Bustamante ("Mr.

Bustamante") and Virginia Solares ("Ms. Solares"). (Dkt. 1.) Plaintiff thereafter filed a succession

of amended complaints.[1] (*See* Dkts. 6, 7.) Plaintiff's original action was for employment

discrimination, specifically on the basis of race, color, religion, age, and disability, invoking Title

VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act

of 1967 ("ADEA"). (Dkt. 1.) Plaintiff's Charge and Amended Complaint refer only to employment

discrimination on the basis of race, religion, and age, with reference to Title VII and the ADEA.

(Dkts. 7, 14.) On April 18, 2021, Defendant Schneider moved to dismiss Plaintiff's complaint in

its entirety for failure to state a claim. (Dkt. 20.)  The Court granted this motion in part and denied

this motion in part on March 28, 2022, leaving Defendant Schneider as the sole remaining

---

[1] For the purposes of this Order, the Court considers Plaintiff's original allegations as laid out in
Plaintiff's Charge (Dkt. 14), and Plaintiff's Fourth Amended Complaint to comport with Plaintiff's
request that the Court ignore "the first three drafts." (Dkt. 7 at 1.)

defendant. (Dkt. 36). After this partial dismissal, the only remaining claims in dispute are: (1) employment discrimination on the basis of religion, in violation of Title VII; and (2) retaliation for requesting a religious accommodation, in violation of Title VII. (*Id.*)

Presently before the Court is Defendant's Motion for Summary Judgment (Dkt. 66) as to both of the remaining claims, as well as Plaintiff's Cross-Motion for Summary Judgment. (Dkt. 68.) After considering the filings by Plaintiff and Defendant, the evidence admitted to the record, and the applicable law, the Court hereby GRANTS Defendant's Motion for Summary Judgment as to both remaining claims and DENIES Plaintiff's Cross-Motion for Summary Judgment.

## Background

### A.     Plaintiff's Initial Employment and Conduct at Defendant Schneider

Defendant Schneider employed Plaintiff for five months before terminating him on January 14, 2020. (Dkt. 67, Attach. 2.)[2] Prior to his termination, Plaintiff's job duties included picking up and delivering freight, both of which were subject to the supervision of Mr. Bustamante and Ms. Solares. (Dkt. 67.)

On October 9, 2019, Plaintiff initiated inappropriate correspondence with colleagues. *See* (Dkt. 67, Attach. 3.) Plaintiff wrote to a driver-trainer named Chris Kent (Dkt. 67, Attach. 2 at 11), in reference to his obligation to call Ms. Solares in lieu of "communicat[ing] in print on the message app," specifically stating "[i]t's great that at age 62 I still drive the women wild and make them do the craziest things." (Dkt. 67, Attach. 3 at 2.) Mr. Kent responded to this message by informing Plaintiff that "these particular issues are not within the scope of my job and are best approached with your DBL." (Dkt. 67, Attach. 3 at 1.)

---

[2] The Parties have labeled their sub-filings as "Exhibits." However, the Court will use "Attachment" to refer to these sub-filings in accordance with official docket entries.

The record further indicates that on October 21, 2019, Plaintiff sent an email to four (4) of his colleagues, purportedly regarding a "training." (Dkt. 67, Attach. 4.) Despite spanning several pages, Plaintiff's email did not elaborate on said training but instead discussed his religion and the "war of the sexes" he felt he was engaged in with Ms. Solares. (*Id.* at 2.) As part of this conflict, Plaintiff felt that Ms. Solares's insistence that Plaintiff interact with her via telephone rather than messaging app conveyed her "strong contempt for independent critical free-thinkers on God, the girls and the meaning and purpose of life." (*Id.* at 4.) These colleagues forwarded Plaintiff's correspondence to Mr. Bustamante, who then sent an email to another colleague asking for "[s]uggestions how to proceed with [Plaintiff]" due to Plaintiff's "inappropriate communication." (Dkt. 67, Attach. 4 at 1.)

### B.   Plaintiff's Performance Improvement Plan

On November 22, 2019, Plaintiff was placed on a performance improvement plan ("PIP") to boost his adherence to "[r]espect for all," citing the October 21, 2019, email's "offensive… [s]exual [sic] inappropriate references" as the catalyst for such action. (Dkt. 67, Attach. 5). The PIP additionally outlined the following provisions: (1) a mutually agreed upon plan requiring Plaintiff to seek out Ms. Solares to address "load issues and any other concerns," (2) a follow-up plan recommending meetings between Plaintiff and Ms. Solares to discuss progress, and (3) the possible outcome of termination in the event of a subsequent occurrence. (*Id.*)

### C.   Plaintiff's Additional Emails and Subsequent Termination

The record indicates that Plaintiff sent additional emails to his supervisors after being placed on the PIP. On December 24, 2019, Plaintiff emailed Mr. Bustamante and Ms. Solares to complain about his experience with a former employer, referring to that company as "the Church of Latter-Day Holy Whoremongers," apparently in reference to their religious affiliation or

perceived religious affiliation. (Dkt. 67, Attach. 6). In this email, he also referred to former colleagues at that company as, among other things, "the USS Battle-Bitch Whore-Fang," and "dickless[] clueless[] and submissive." (*Id*.)

On January 13, 2020, Plaintiff once again sent an email to Mr. Bustamante and Ms. Solares, in which—interjected amid roughly eleven single-spaced pages about religion, mental health, and his own past—he sought religious accommodation in the form of "an exception on the ban on divisive God talk, because [he was] talking about the God who champions and blesses secularism." (Dkt. 67, Attach. 7 at 8.) Other than this request for the ability to talk about God in his emails, the record does not reflect that Plaintiff sought any other religious accommodation from Defendant Schneider during the course of his employment. (Dkt. 67, Attach. 2 at 17.) The Parties do not dispute that Defendant Schneider terminated Plaintiff's employment the following day, on January 14, 2020. (Dkts. 14, 67.)

## Legal Standards

### A.    Summary Judgment

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(a). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party… [and a] fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (citation omitted); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Courts look to the substantive law to identify what facts are material, and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating the absence of evidence supporting the nonmoving party's claims. *Duffie v. United States*, 600 F.3d 362, 371 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986)). The burden then shifts to the nonmoving party "to show the existence of a genuine fact issue for trial." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The nonmoving party must go beyond the pleadings and identify specific evidence in the record supporting its position. *Id.* at 349-50 (citations omitted); *Anderson*, 477 U.S. at 248. When confronted with cross motions for summary judgment, the court must "review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *A.A. v. Northside Indep. Sch. Dist.*, 951 F.3d 678, 684 (5th Cir. 2020) (quotation omitted).

**B.     *Pro Se* Plaintiffs**

As a *pro se* litigant, Plaintiff's pleadings are "construed liberally." *Butler v. Porter*, 999 F.3d 287, 292 (5th Cir. 2021). Indeed, the *pro se* litigant's pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *United States v. Davis*, 629 F. App'x 613, 618 (5th Cir. 2015), (quoting *Haines v. Kerner*, 404 U.S. 519, 520) (1972)). However, a *pro se* litigant is not simply "exempt… from compliance with relevant rules of procedural and substantive law." *Thorn v. McGary*, 684 F. App'x 430, 433 (5th Cir. 2017) (quoting *Hulsey v. Tex.*, 929 F.2d 168, 171 (5th Cir. 1991)).

<u>**Discussion**</u>

Plaintiff has two remaining claims against Defendant Schneider: (1) for religious discrimination under Title VII, and (2) for retaliation under Title VII. (Dkt. 67.) The Court considers each of Plaintiff's remaining claims in turn in granting Defendant's Motion for Summary Judgment and denying Plaintiff's Cross-Motion.

### A.    Plaintiff's Title VII Religious Discrimination Claim

Plaintiff's first claim is that Defendant Schneider's termination of Plaintiff's employment constitutes religious discrimination in violation of Title VII of the Civil Rights Act of 1964. (Dkt. 7.) Plaintiff asserts that he expressed his religion in emails and in songs but was then punished by being required to call his manager several times a day to be shamed with "tradition-bound conservative morality." (Dkt. 7 at 2). In addition, Plaintiff claims repeatedly that Defendant Schneider refused to accommodate his religious practices. (Dkt. 7 at 2; Dkt. 14 at 2.) Plaintiff alleges that he requested accommodations for his religious beliefs from his manager, but that ultimately, his religious beliefs and expressions led to his termination. (*Id.*) Defendant Schneider disagrees with Plaintiff's version of events, claiming that there was an alternate legitimate reason for Plaintiff's termination—that Plaintiff was terminated solely because of his repeated breaches of company policies and core values "after being counseled on his behavior by his supervisors." (Dkt. 67 at 1.) In support, Defendant Schneider has provided email correspondence from Plaintiff that demonstrates "demeaning, inappropriate, and sexist language," as well as the PIP that Plaintiff was placed on prior to his termination. (*Id.*) While Plaintiff explicitly argues that Defendant Schneider failed to accommodate his religious beliefs or practices, in construing the *pro se* pleadings liberally, the Court will assess Plaintiff's claims of religious discrimination both under a disparate treatment analysis and under a failure to accommodate analysis. Plaintiff fails to provide evidence to establish a *prima facie* case of religious discrimination under either analysis. Thus, this claim must be dismissed.

### 1.    Plaintiff's Disparate Treatment Claim Fails to Meet His *Prima Facie* Burden

Generally, Title VII of the Civil Rights Act of 1964 prohibits employers from discharging or otherwise discriminating against an employee on the basis of religion.[3] 42 U.S.C. §§ 2000e-2(a)(1), 2000e(j). Employment discrimination claims are typically analyzed under the well-established *McDonnell Douglas* framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The Fifth Circuit analyzes claims of employment discrimination based on disparate treatment of religious practices or beliefs under a similar framework. *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 485 (5th Cir. 2014), *aff'd*, 139 S. Ct. 1843 (2019); *see Horvath v. City of Leander*, 946 F.3d 787, 791 (5th Cir. 2020) ("Title VII and TCHRA claims are subject to the burden shifting framework announced in *McDonnell Douglas Corp.…*").[4] Under this analysis, a plaintiff must initially establish a *prima facie* case of religious discrimination. *Davis*, 765 F.3d at 485. To do so, a plaintiff must show (1) that they had a *bona fide* religious belief; (2) that this belief conflicted with an employment requirement; (3) that their employer had knowledge of their belief; and (4) that the employee suffered an adverse employment action as a result of their failure to comply with the conflicting employment requirement. *See Davis*, 765 F.3d at 485 (citing *Tagore v. United States*, 735 F.3d 324, 329 (5th Cir. 2013) (citations omitted)). If a plaintiff adequately makes this *prima facie* showing, the burden shifts to the defendant employer to demonstrate that it either

---

[3] A plaintiff can claim religious discrimination under Title VII under theories of either disparate treatment or disparate impact. *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771 (2015). Here, Plaintiff is proceeding under a theory of disparate treatment rather than disparate impact, as he is alleging his employer is treating him in particular less favorably than others because of his religion rather than arguing his employer engages in employment practices facially neutral in application whose impact falls more harshly on those of his religion. *See id.* at 781 (Thomas, J., concurring).

[4] The Supreme Court developed the *McDonnell-Douglas* framework to address cases in which discrimination can be proved only by circumstantial evidence. *EEOC v. U.S. Steel Tubular Products, Inc.,* 2016 WL 11795815, at *11 (S.D. Tex. Aug. 4, 2016) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (citation omitted).

reasonably accommodated the plaintiff, or alternatively, that it was unable to do so without undue hardship. *Id.* (quoting *Antoine v. First Student, Inc.*, 713 F.3d 824, 831 (5th Cir. 2013)).

### a.   Plaintiff Had a *Bona Fide* Religious Belief or Practice

To determine whether Plaintiff has met his burden of showing a *prima facie* case for religious discrimination, the Court must first determine whether Plaintiff held a *bona fide* religious belief. *Davis*, 765 F.3d at 485. The Fifth Circuit construes *bona fide* religious beliefs to encompass "moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views." *Id.* (quoting 29 C.F.R. § 1605.1). Importantly, courts are reticent about conducting "judicial inquiry into the sincerity of a person's religious belief," cautioning that such inquiries ought to be handled with a "light touch, or judicial shyness." *Id.* at 486 (quoting *Tagore*, 735 F.3d at 328) (citations and internal quotation marks omitted). *See, e.g., A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 261 (5th Cir. 2010) ("[W]e must refuse to dissect religious tenets just because… [Plaintiff's] beliefs are not articulated with the clarity and precision that a more sophisticated person might employ.") (quoting *Thomas v. Review Bd. Of Ind. Emp't Sec. Div.*, 450 U.S. 707, 715 (1981)) (internal quotation marks omitted); *Moussazadeh v. Tex. Dep't of Crim. Justice*, 703 F.3d 781, 790 (5th Cir. 2012) (focusing the judicial inquiry into religious sincerity on what the prisoner claimed was important to him). In fact, "the sincerity of a plaintiff's engagement in a particular religious practice is rarely challenged" and "claims of sincere religious belief in a particular practice have been accepted on little more than a plaintiff's credible assertions." *Davis*, 765 F.3d at 486 (quoting *Tagore*, 735 F.3d at 328).[5] Thus, taking its cue from

---

[5] *But see Hansard v. Johns-Manville Products Corp*, 1973 WL 129, at *2 (E.D. Tex. Feb. 16, 1973) (finding that the Plaintiff did not demonstrate the requisite sincerity of religious convictions where he had not been a lifelong follower, and he was unable to elaborate on the origin of his religion); *Brown v. Pena*, 441 F. Supp. 1382, 1385 (S.D. Fla.1977), *aff'd,* 589 F.2d 1113 (5th Cir. 1979) ("Plaintiff's 'personal religious creed' concerning Kozy Kitten Cat Food [that it contributed

the Supreme Court, the Fifth Circuit has cabined its task to determining whether a claimant's belief is "in [their] own scheme of things, religious." *Id.* at 485 (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965)).

Under this framework, the Court must determine whether the Plaintiff's belief in the "God of Scientific Enlightenment and Natural Law" is a *bona fide* religious belief for Title VII purposes. (Dkt. 68 at 2.) Without analysis or argument, Defendant Schneider asserts that Plaintiff's professed religion is not a *bona fide* religious belief. (Dkt. 67 at 7 n. 3; Dkt. 69; Dkt. 73 at 2-3.) Yet, Plaintiff maintains and indeed, demonstrates throughout his pleadings, that he has "strictly, wholeheartedly[,] and zealously followed" his religion and its mandated practices since "God gave them to [him] in June 2010." (Dkt. 68 at 6.) To further bolster the sincerity of his beliefs, Plaintiff delineates his path to enlightenment, as well as the role his religious observances assume, and have historically assumed, in his everyday life. *See generally* (Dkt. 68). While Plaintiff's delineations may be difficult to follow at times, this does not render his beliefs insincere, nor inadequately "*bona fide*" for Title VII purposes—particularly in light of the Court's reticence to make "credibility determinations" in this context. *Davis*, 765 F.3d at 487 (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343); *cf. Seeger*, 380 U.S. at 184 ("[r]eligious experiences which are as real as life to some may be incomprehensible to others."). Accordingly, drawing all reasonable inferences in favor of Plaintiff as the nonmoving party, and adhering to both the "light touch" and "judicial shyness" underpinning this particular analytical framework, the Court finds

---

to his well-being] can only be described as a mere personal preference, and therefore is beyond the parameters of the concept of religion . . ."); *Bellamy v. Mason's Stores, Inc.,* 368 F.Supp.1025, 1026 (E.D. Va. 1973), *aff'd,* 508 F.2d 504 (4th Cir. 1974) (holding that the Ku Klux Klan is not a religion under the meaning of Title VII because the "proclaimed racist and antisemitic ideology" has a "narrow, temporal, and political character inconsistent with the meaning of 'religion' as used in § 2000e.").

that Plaintiff has presented sufficient evidence to raise a genuine issue of material fact as to the first element of his *prima facie* case, i.e., whether he possesses a *bona fide* religious belief.

### b.  Employer Had Knowledge of Plaintiff's Belief

While an employer's knowledge of a plaintiff employee's religious beliefs is typically the third element of a *prima facie* case for religious discrimination under a Title VII disparate treatment analysis, the Court does not need to discuss this element with any great depth: there is copious evidence that Plaintiff informed Defendant Schneider of his religious beliefs, and Defendant Schneider does not dispute this fact. (Dkts. 67 at 6-7). Thus, Plaintiff meets his *prima facie* burden with regard to this element.

### c.  Plaintiff's Belief or Practice Did Not Conflict With Defendant's Employment Requirement

The Court now moves to the more complex task of determining whether Plaintiff's religious beliefs conflicted with any of Defendant Schneider's employment requirements. Plaintiff holds two mandated religious practices: first, his "solitary celibate lifestyle," and second, his "practice of talking about God." (Dkt. 68 at 6). Defendant Schneider maintains that there is no evidence in the record to indicate that either of these practices conflicted with Plaintiff's duties as a long-haul trucker. (Dkt. 67 at 7; Dkt. 73 at 2-3.) According to Defendant Schneider, "pick[ing] up and deliver[ing] freight" were the extent of Plaintiff's job duties while employed at Schneider, neither of which conflicted with Plaintiff's religious beliefs. (Dkt. 67 at 2, 7.) Plaintiff, on the other hand, alleges that Defendant Schneider's "ban on divisive God talk" and mandated "PIP Reprimand ordered [sic] inappropriate pastoral counseling" conflicted with his two mandated religious practices. (Dkt. 67, Attach. 7 at 8; Dkt. 68 at 1, 6.)

There is no evidence on the record that Defendant Schneider in any way attempted to impose an employment requirement that would conflict with Plaintiff's religiously mandated

10 / 21

celibate lifestyle. At issue, then, is whether there is evidence that Plaintiff's practice of talking about God conflicted with an employment requirement—specifically, with a "ban on divisive God talk" or with his PIP. *See* (Dkt. 67, Attach. 5, Attach. 7 at 8.)

The only evidence on the record that Defendant Schneider had any type of "ban on divisive God talk" is Plaintiff's email account of a discussion between himself and Mr. Bustamante, in which Mr. Bustamante allegedly said "this company is secular so [Bustamante] want[s] to keep God and religion out of this issue." (Dkt. 67, Attach. 7 at 6.) One comment from one supervisor over the course of five months of employment is not sufficient evidence of a company policy banning Plaintiff from talking about God; nor does Plaintiff provide any other evidence of a ban on religious expression. *See Ganheart v. Brown*, 740 F. App'x 386, 389, 392 (5th Cir. 2018) (per curiam) (unpublished) (while *pro se* filings are subject to "less stringent standards," they cannot be mere "naked assertions…devoid of further factual enhancement").

There is evidence, however, that Plaintiff's job duties extended beyond "pick[ing] up and deliver[ing] freight" (Dkt. 67 at 2, 7.). The PIP form, by its nature, addresses an employee's failure to live up to job expectations; Plaintiff's PIP denotes that its purpose is to "[a]ddress performance that consistently does not meet expectations or has not improved satisfactorily with coaching, issues that have a critical impact to business results, *or significant core competencies of the role* that have not been achieved." (Dkt. 67, Attach. 5) (emphasis added). It goes on to note that a core value of the business, and arguably a competency required for Plaintiff's role, was respect for all in the form of appropriate communication. (*See id.*) Thus, there is a cognizable argument that one of Plaintiff's job duties was to communicate respectfully in accordance with Defendant Schneider's vision of appropriate business communications. In particular, the PIP highlights the need for outlined chains of communication ("[c]ommunication needs to follow your leadership

group, from your DTL to your divisional leadership"), "verbal communication" and "routine calls", and the role of communication in ensuring timeliness and avoiding delays in deliveries and operations. (*Id.*) The PIP flags, as the cause for its issuance, "respect for all" in "communication" with the "[s]pecific [f]acts" section calling attention to Plaintiff's October 21, 2019, email. (*Id.*) However, the PIP does not take issue with—or even mention—Plaintiff's discussion of religion in the October 21, 2019, email. Instead, the PIP states that "[t]he associates who received the message found it offensive due to [s]exual [sic] inappropriate references." (*Id.*)

Plaintiff does not dispute that he signed the PIP. (Dkt. 67, Attach. 2 at 14.) Nor does Plaintiff claim that the provisions of the PIP conflict with his practice of talking about God. (Dkt. 67, Attach. 2 at 14.) There is no evidence that any of the employment requirements in the PIP, therefore, limited Plaintiff's ability to discuss God or his religious beliefs. The PIP employment requirements merely required him to communicate clearly and effectively with his superiors about the operational aspects of his truck driving position—and to do so respectfully and without sexually inappropriate references in communications with co-workers. Plaintiff presents no evidence of any employment requirements from Defendant Schneider demanding him to violate his religious mandates of either celibacy or talking about God. As such, Plaintiff fails to meet the summary judgment threshold for his *prima facie* case on this issue, and his claim for summary judgment under a disparate treatment analysis must fail.

### d.   Because Defendant's Employment Requirement Was Not in Conflict with Plaintiff's Belief, the Adverse Employment Action Was Not a Result of Plaintiff's Failure to Comply

Plaintiff has already failed to meet his *prima facie* burden. However, the Court will simply note again that while Plaintiff was terminated for not abiding by his PIP, the PIP was not in conflict with Plaintiff's religious beliefs or practices. (Dkt. 67 at 4-5); (Dkt. 67, Attach. 2 at 14); *see* (Dkt.

67, Attach. 5.) Defendant Schneider acknowledges that Plaintiff was terminated on January 14, 2020, one day after Plaintiff sent an email to Mr. Bustamante and Ms. Solares in which he "[r]eferred to women as 'USS Battle-Bitches and Battle-Bastards Whore Fang'…[a]ccused Ms. Solares of engaging in faceless petty-minded hysterical nonsense; and [s]aid Ms. Solares would only be so lucky if he had personal interest in her or any other woman, and noted he is 'still and always heterosexual.'" (Dkt. 67 at 4-5.) Plaintiff does not dispute any of these facts. *See* (Dkt. 68.) Plaintiff presents no evidence that the termination was based on a conflict between his religious practice of talking about God and any of Defendant Schneider's requirements in the PIP. *See* (Dkt. 7, 68). Instead, Plaintiff's Motion for Summary Judgment highlights lines from the PIP about "respect for all" and the need for professional communications "to maintain an appropriate working environment," as well as the need to communicate effectively within his chain of command. (Dkt. 68 at 10-11.) Plaintiff's Response to Defendants' Motion for Summary Judgment states only that he was required to communicate regularly via phone with Ms. Solares. (Dkt. 72 at 8.) There is no evidence that the adverse employment action was taken as a result of Plaintiff's failure to comply with an employment requirement that conflicted with his religious beliefs, and there is no genuine issue of material fact with regard to this element. Plaintiff fails to present a *prima facie* case of disparate treatment religious discrimination.

### 2. Plaintiff's Failure to Accommodate Claim Fails to Meet His *Prima Facie* Burden

The Court's analysis of Plaintiff's claim that Defendant Schneider engaged in religious discrimination by failing to accommodate Plaintiff's religion follows a similar, but not identical, test. In *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015), the Supreme Court highlighted that when a plaintiff alleges a failure to accommodate, an employer need not have actual knowledge of the plaintiff's need for an accommodation, but the need for an accommodation

must be a motivating factor in the adverse employment action. In order to show a *prima facie* case for a failure to accommodate a religious practice, an employee must show (1) a sincerely held religious belief; (2) a conflict between the religious belief or practice and an employment requirement; (3) an adverse employment outcome; and (4) that the need for an accommodation was a factor in the employer's decision. *Abercrombie*, 575 U.S. at 771-774; *Abeles v. Metro. Wash. Airports Auth.*, 676 F. App'x 170, 176 (4th Cir. 2017).

The Court has already analyzed the first three of these factors in disposing of Plaintiff's claims above. There is no need for an extensive repeated discussion of these factors here. Plaintiff had a *bona fide* religious belief. *See generally* (Dkt. 68.) Plaintiff suffered an adverse employment outcome. (Dkt. 67 at 5.) However, there is no conflict between the two religious practices Plaintiff states that he must follow—celibacy and talking about God—and the employment requirements either of trucking or stated in the PIP. (Dkt. 68 at 6; Dkt. 67, Attach. 5.) As such, Plaintiff does not carry his *prima facie* burden to prove a case of religious discrimination based on a failure to provide an accommodation.

On the fourth factor, the Court also notes that Plaintiff presents no evidence that the need for an accommodation was a factor in Defendant Schneider's decision to terminate Plaintiff's employment. *See generally* (Dkts. 68, 72, 74.) Defendant Schneider warned Plaintiff in the November 22, 2019, PIP that if he continued to violate the expectations set forth in the PIP with regards to respectful communications, he would face termination. (Dkt. 67 at 3; Dkt. 67, Attach. 5.) On January 13, 2020, Plaintiff sent an email in which he used language that referred to women as "USS Battle-Bitches and Battle-Bastards Whore-Fang," repeatedly called his female supervisor his "accuser," and used terms like "hysterical," "unreasonable," or "petty" when talking about Ms. Solares. (Dkt. 67, Attach. 7.) Plaintiff was terminated the following day. (Dkt. 67 at 3.) Defendant

Schneider cites Plaintiff's inappropriate communications as the reason, claiming that Plaintiff was terminated because "he repeatedly sent inappropriate, sexist, and demeaning emails to his supervisors and colleagues, even after being counseled about this behavior." (Dkt. 67 at 8-10; Dkt. 73 at 2-3.) In the PIP, Defendant Schneider clearly states that Plaintiff's communications were inappropriate and "offensive due to [s]exual [sic] inappropriate references" and failure "to follow [Plaintiff's] leadership group," "as well [as] not having verbal communication." (Dkt. 67, Attach. 5.) Plaintiff's January 13, 2020, email, was a written communication, to individuals outside of his leadership group, that contained offensive and potentially sexual terms—in violation of numerous terms of the PIP. Plaintiff does not dispute this. (Dkt. 67, Attach. 2 at 14-14; Dkts. 72, 74.) Nor does Plaintiff present any evidence that his request for accommodations was a factor in his termination. (Dkts. 68, 72, 74.)

Plaintiff has failed to carry the burden of showing both (1) that there was a conflict between his religious practice of talking about God and any employment requirement on Defendant Schneider's part and (2) that his need for an accommodation was a factor in Defendant Schneider's decision to terminate his employment. As a result, Plaintiff fails to make a *prima facie* showing of religious discrimination on his claim of a failure to accommodate under Title VII.

### B. Plaintiff's Title VII Retaliation Claim

Plaintiff's final remaining claim involves allegations of retaliation for engaging in four protected activities: (1) "whistle-blowing communication with other managers about [his] employment discrimination;" (2) "refusing to follow orders that would result in discrimination;" (3) "requesting accommodation for a religious practice;" and (4) "asking managers about salary information to uncover potentially discriminatory wages." (Dkt. 7 at 2.)

Distinct from a religious discrimination claim, Title VII makes it unlawful for an employer to retaliate against an employee who opposes an employment practice that violates Title VII. 42 U.S.C. § 2000e-3(a); *Davis*, 765 F.3d at 489 (5th Cir. 2014). Retaliation claims predicated on circumstantial rather than direct evidence follow the burden-shifting framework set forth in *McDonnell Douglas*. *Davis*, 765 F.3d at 489.

Under this approach, the plaintiff must first make out a *prima facie* case of retaliation. *Id.* (citing *LeMaire v. Louisiana*, 480 F.3d 383, 388 (5th Cir. 2007)). If the plaintiff successfully makes their *prima facie* case, the impetus is upon the employer to state a legitimate, non-retaliatory reason for the employment decision. *Id.* Importantly, the employer's burden is only one of production, not persuasion, and involves no credibility assessment. *Herron v. Federal Express Corp.*, 2021 WL 3816609 at *9 (S.D. Tex. Jul. 30, 2021) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)).

After the employer states its reason—thereby meeting this burden—the plaintiff must then offer sufficient evidence to show that the articulated reason for the employment action was a pretext for retaliation. *Id.*

### 1.    Plaintiff Meets His *Prima Facie* Burden with Respect to Title VII Retaliation

To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that (1) they engaged in conduct protected by Title VII; (2) they suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action. *Cabral v. Brennan*, 853 F.3d 763, 766-767 (5th Cir. 2017) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)) (internal quotation marks omitted).

Here, the first two elements of Plaintiff's *prima facie* case are undisputed. (Dkt. 67 at 10.) Plaintiff requested a religious accommodation, which is a protected activity for Title VII retaliation

purposes, and Plaintiff was terminated. (Dkt. 67 at 5, Attach. 7 at 8.) *See e.g. EEOC v. U.S. Steel Tubular Products, Inc.*, 2016 WL 11795815, at *17 (S.D. Tex. Aug. 4, 2016) (holding that requesting religious accommodation constituted "opposition conduct," which is protected activity in the retaliation context); *Roberts v. Lubrizol Corp.*, 2013 WL 12099843 at *8 (S.D. Tex. Jun. 28, 2013) ("Termination is undoubtedly an adverse action in that the threate [sic] of termination would dissuade any reasonable employee from supporting a charge of discrimination."). Thus, the Court focuses its inquiry on whether Plaintiff has produced sufficient evidence as to whether there is a causal link between the protected activity and the adverse action.

The Supreme Court has held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). However, the Fifth Circuit routinely holds that this stringent standard does not control at the *prima facie* case stage of a Title VII retaliation claim.[6] *E.g. Evans v. City of Houston,* 246 F.3d 344, 354 (5th Cir. 2001) ("the 'causal link' required in prong three of the prima facie [sic] case for [Title VII] retaliation is not as stringent as the 'but for' standard"); *see also Long v. Eastfield College*, 88 F.3d 300, 305 n.4; *Nunley v. City of Waco*, 440 F. App'x 275, 281 (5th Cir. 2011). Instead, a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action, provided that such temporal proximity is "very close." *Brown v. Wal-Mart Stores East, L.P.,* 969 F.3d 571, 578 (5th Cir. 2020) (quoting *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs,* 810 F.3d 940, 948 (5th Cir. 2015)). The Fifth Circuit has found periods of time up to two or even two-and-a-half months between the protected activity and the adverse employment action close enough to satisfy the

---

[6] *But see EEOC v. U.S. Steel Tubular Products, Inc.,* 2016 WL 11795815, at *11 (S.D. Tex. Aug. 4, 2016) (holding that the third element of Plaintiff's *prima facie* case requires 'but for' causation).

requisite causal connection based on timing alone at the *prima facie* stage. *Brown*, 969 F.3d at 578 (citing *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 995 (5th Cir. 2005) (two months); *Garcia v. Prof'l Cont. Servs., Inc.,* 938 F.3d 236, 242 (5th Cir. 2019) (two-and-a-half-months)); *see Lira v. Edward Jones Invs.*, 2023 U.S. App. LEXIS 2983 at *5 (5th Cir. Feb. 7, 2023) (indicating that a time period of three or more months "may not be sufficiently close").

Temporal proximity, "even a very close one… can only establish causation when it is connected to the decision maker's knowledge of the protected activity." *Ladner v. Walmart*, 834 F. App'x 893, 897 (quoting *Thompson v. Somervell Cty., Tex.*, 431 F. App'x 338, 342 (5th Cir. 2011) (per curiam) (internal quotation marks omitted). Temporal proximity is insufficient to prove a causal link between an employee's protected activity and the adverse employment action where there is evidence that the employer lacked knowledge of the protected activity. *See Dearman v. Stone Cnty. Sch. Dist.*, 832 F.3d 577, 582 (5th Cir. 2016). Here, although Plaintiff does not specify precisely when he requested accommodations from Defendant Schneider, the record indicates that his correspondence with Defendant Schneider's employees on January 13, 2020, explicitly includes a request for "an exception on the ban on divisive God talk." (Dkt. 67, Attach. 7 at 8.) Moreover, Defendant Schneider does not dispute the fact that they had knowledge of Plaintiff's religious accommodation request prior to his termination. *See* (Dkt. 67 at 9−10.) Thus, because Defendant Schneider terminated Plaintiff's employment the day after Plaintiff requested a religious accommodation, the time elapsed between the protected activity and the adverse employment action is well within the Fifth Circuit's two-and-a-half-month temporal proximity assessment to support a finding of the requisite causal connection. This, coupled with Defendant's knowledge of the protected activity, is enough for Plaintiff to establish the necessary causal link

for this retaliation claim and thus meet his summary judgement burden with regard to his *prima facie* case for Title VII retaliation.

### 2.    Defendant's Legitimate, Non-retaliatory Reason for Termination

Because Plaintiff has established a *prima facie* case of retaliation, Defendant Schneider must articulate a legitimate, non-retaliatory reason for the employment action. *Herron*, 2021 WL 3816609 at *13; *Septimus v. City of Houston*, 399 F.3d 601, 610 (5th Cir. 2005). As noted above, this burden is one of production, not proof, "as the ultimate burden of persuasion always remains with the employee." *Herron*, 2021 WL 3816609 at *9 (citing *Horvath v. City of Leander*, 946 F.3d 787, 793 (5th Cir. 2020) (internal citations omitted)). To this end, Defendant Schneider "may meet this burden by presenting evidence that, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Id.* at *17 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (internal quotation marks omitted)).

Defendant Schneider argues that their legitimate, non-retaliatory reason for discharging Plaintiff was his "repeated inappropriate, sexist, and demeaning emails to his colleagues and supervisors." (Dkt 67 at 10.)  This is further supported by the information outlined on Plaintiff's PIP, (Dkt. 67, Attach. 5) which Plaintiff received on November 22, 2019, "due to his inappropriate communications with his colleagues and supervisors" (Dkt. 67 at 3). The PIP stated that Plaintiff, by his actions, had failed to adhere to Defendant Schneider's core value of "respect for all" and outlined the possible outcome of termination in the event that he engaged in similar conduct in the future. (Dkt. 67, Attach. 5). In light of this evidence, Defendant Schneider has successfully carried their burden of production. *See Horvath,* 946, F.3d at 793 (finding employee's defiance provided a legitimate non-retaliatory reason for termination, separate from religious beliefs); *see also*

*LeMaire*, 480 F.3d at 391 (5th Cir. 2007) (finding that job performance, including a refusal to do a task, "is a legitimate, non-retaliatory reason for termination").

Accordingly, Plaintiff could now avoid summary judgment only by producing evidence that the employer's proffered reason for his termination was merely pretext for retaliation. *Morgan v. Goodman Manufacturing Co.*, 2021 U.S. Dist. LEXIS 59521 at *13-14 (S.D. Tex., Mar. 10, 2021); *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 490 (5th Cir. 2014) (quoting *LeMaire*, 480 F.3d at 388-89). Ultimately, the employee must show that "but for" the protected activity, the adverse employment action would not have occurred. *Morgan*, 2021 U.S. Dist. LEXIS 59521 at *13-14. Plaintiff has failed to adduce any evidence that the proffered reason for his termination was merely pretext. *See* (Dkts. 68, 72, 74.) Accordingly, summary judgment should be granted in favor of Defendant Schneider on Plaintiff's Title VII retaliation claim.

## Conclusion

After careful consideration of the facts as presented by both parties, Plaintiff has failed to present sufficient evidence to carry his burden to survive summary judgment on either his Title VII religious discrimination claims or his Title VII retaliation claim.

For the reasons identified above, the Court hereby GRANTS Defendant's Motion for Summary Judgment and DENIES Plaintiff's Cross-Motion for Summary Judgment.

The Clerk of Court is hereby DIRECTED to TERMINATE the case.

SIGNED this September 26, 2023.

Diana Saldaña
United States District Judge